USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-27-12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CEDIEU GUE,                                    :
                                               :
                           Plaintiff,          :
                                               :          **OPINION AND**
                                               :          **ORDER**
                - against -                     :
                                               :          **10 Civ. 8958 (RLE)**
JOE SULEIMAN, ET AL.,                          :
                                               :
                           Defendants.         :

**RONALD L. ELLIS, United States Magistrate Judge:**

# I. INTRODUCTION

*Pro se* Plaintiff, Cedieu Gue ("Gue"), brings this action against his former employer,

Defendants Joe Suleiman ("Suleiman") and Tri-State Limousine LLC ("Tri-State") (collectively

"Defendants") alleging racial discrimination and retaliation in violation of Title VII of the Civil

Rights Act of 1964, the New York State Human Rights Law ("NYSHRL") and the New York

City Human Rights Law ("NYCHRL"). In addition, Gue alleges that Suleiman and Tri-State

violated the Americans with Disabilities Act ("ADA") because Suleiman failed to accommodate

Gue's disability by failing to provide him with medical insurance. Gue claims that Suleiman and

Tri-State selectively provided medical insurance to certain employees but not to him because of

his race and nationality. In addition, Gue alleges that Tri-State and Suleiman mistreated and

terminated him abruptly because of his race and because he inquired about medical insurance

coverage. Gue also claims that Suleiman and Tri-State retaliated against him in violation of

Title VII when Gue filed a complaint with the New York State Division of Human Rights.

Defendants now ask that this Court grant summary judgment on all claims. For the following

reasons, the Defendants' motion is **GRANTED**.

## II. BACKGROUND

### A. Factual Background

#### 1. Gue's Alleged Racial Discrimination Claim Against Defendants

Gue was employed by Tri-State and Suleiman, the owner of Tri-State, as a limousine driver. He began his employment in the summer of 2006 and worked until he was either suspended or terminated in April 2009. Gue had previously worked as a limousine driver at County Limousine from 2001 to 2005. (Dep. of Cedieu Gue, Motion for Summ. J., Ex. 3 ("Gue Dep.") 42).

Gue claims that Suleiman singled him out and discriminated against him because of his race and nationality. Specifically, he alleges that Suleiman mistreated him and refused to provide him with medical insurance because he is a black Haitian, while Suleiman secretly provided medical insurance to other employees. In the Complaint, Gue does not allege specific facts supporting his assertion that Suleiman secretly provided other employees with medical insurance. However, in his deposition, Gue said he knew that Suleiman was providing his other employees with medical insurance because of conversations he had with other employees. One of these employees was "Manish," who Gue describes as being of mixed race. (Gue Dep. 59.) Gue said that Manish told him that he received insurance benefits from Tri-State. (*Id.* at 60.) Gue also stated that Manish was mistreated by Suleiman. (*Id.* at 86.) Additionally, Gue stated in his deposition that another driver, who was Caucasian and whose name he could not recall, told him that one of the reasons he still worked with Suleiman was that he received insurance benefits from Tri-State. (*Id.* at 62.)

On July 2, 2009, Gue filed a complaint with the New York State Division of Human

2

Rights ("NYSDHR"), charging Suleiman and Tri-State with an unlawful discriminatory practice in employment based on race/color, national origin, or disability in violation of New York Executive Law, Section 296.  Following an investigation, the NYSDHR found no probable cause to believe that Suleiman and Tri-State had engaged in, or were engaging in, the unlawful discriminatory practices alleged by Gue.[1]  The NYSDHR ultimately dismissed Gue's complaint.

In their motion for summary judgment, Defendants claim that Gue was not fired, but was suspended for three weeks, and retained the ability to come back to work.  In support of this assertion, they point to the April 16, 2009 and June 15, 2009 letters Suleiman wrote to the New York State Department of Labor, indicating that Gue could return to work after April 27, 2009.

Suleiman maintains that Gue was suspended because the company had received a number of complaints about his poor job performance throughout the course of his employment. (Decl. of Joe Suleiman ("Suleiman Decl."), ¶ 5.)  In response to Gue's discovery requests, Tri-State produced documents showing four instances when Gue failed to perform his job in a satisfactory manner. (Def. Motion for Summ J. ("Def. Summ. J."), Ex. 8.)  The first alleged incident occurred in September 2008, when Gue picked up a Japanese executive at JFK airport. (Suleiman Decl. at ¶ 6.) When the customer arrived, Gue allegedly offended him by crumbling the sign bearing the customer's name and tossing it on the floor in front of him.  (*Id.*)  The second alleged incident occurred in January 2009, when Gue allegedly failed to look up the destination address of a customer.  (*Id.* at ¶ 7.)  A third purported incident occurred in March

---

[1] Specifically, the NYSDHR found that the evidence gathered during the investigation was not sufficient to suggest that Gue's race, disability, and/or national origin were factors in his termination.  The Division found that Suleiman was not aware that Gue had a disability and that Tri-State did not provide medical insurance to any of its employees. The Division also found that Gue was suspended for three weeks, and not terminated, for performance related issues and was expected to return to work on April 27, 2009.  (Motion for Summ. J. at Ex. 5 (Gue v. Tri-State Limousine, No. 10134892 (N.Y. Div. Hum. Rts. May 4, 2010) (determination and order after investigation)).

2009, when Gue was allegedly running late in picking up a customer. (*Id.* at ¶ 8.) The fourth incident occurred on April 6, 2009, when Gue was allegedly scheduled to pick up a customer but was unreachable by either telephone or two-way radio. (*Id.* at ¶ 9.) Gue had accepted the fare earlier but asked the dispatcher to try and find another driver to pick up the customer. (*Id.*) Suleiman asserts that he discussed these incidents with Gue after each occurrence, and suspended him for three weeks after the April 6, 2009 incident. (*Id.* at ¶ 10.) After Gue failed to show up for work when he was expected to return on April 27, 2009, he was terminated and replaced by a black Haitian driver. (*Id.* at ¶ 14.)

In his deposition, Gue contested the validity of these complaints and addressed the circumstances of each. He states that while he was late in picking up a customer once at the airport, he had been in contact with the dispatcher to let him know his delay was caused by excess traffic. (Gue Dep. 95.) With regard to his alleged failure to look up the destination address of a customer, Gue testified that she was a customer he regularly picked up and he was searching for the address when she approached his vehicle. (*Id.* at 97.) He asked her to give him a couple of minutes to look up the address, but she stated that she would find it and asked him to begin driving her. (*Id.*) Gue also disputes Defendants' characterization of the incident when he picked up a Japanese customer at the airport. He stated that he was holding the sign in his hand next to the customer at the baggage carousel as the luggage began arriving. (*Id.* at 98-99.) In order to assist the customer in retrieving the bags, the sign inadvertently fell to the floor. (*Id.* at 99.) Gue was later informed that it was considered disrespectful in Japanese culture to drop a paper with a person's name on it. (*Id.*) Gue stated that Suleiman never mentioned that his performance had been sub par. (*Id.* at 101.) However, Gue did not address the alleged

4

complaints of overall poor job performance in either the Complaint or in his opposition to
Suleiman's motion for summary judgment.

Suleiman also argues that he should be accorded with the "same actor inference" against
discrimination because he previously worked with Gue for almost five years at another
company, County Limousine. (Suleiman Decl. at ¶ 4; *see* Gue Dep. at 42.)   Suleiman further
argues that he cannot be held individually liable under Title VII nor for Gue's other claims since
Gue has not successfully raised a question of fact as to the underlying claim of discrimination by
the employer and has thus failed to meet his burden to prove that Suleiman engaged in
discriminatory conduct.

    **2.**        **Gue's Retaliation Claim**

In the Amended Complaint, Gue claims that Suleiman retaliated against him because he
had filed a complaint with the NYSDHR.  (Pl. Am. Compl. ("Am. Compl."), 3.)  As a means of
retaliating against him,  Gue claims Suleiman told the New York State Department of Labor that
Gue voluntarily left Tri-State to become a barber, which he disputes.  (*Id.*)  Gue stated at his
deposition, but not in his Complaint, that the retaliation involved Suleiman enlisting the
collusion of other employees to "dig dirt" on him and to affirm Suleiman's assertion that Gue
left voluntarily.  (Gue Dep. 70.)

In his motion for summary judgment, Suleimen stated that Gue's claims of retaliation
against him must be dismissed because the alleged retaliatory act—informing the Department of
Labor  that Gue left his position voluntarily—occurred before plaintiff made any claim of
discrimination.  Gue conceded in his deposition that the EEOC received Suleiman's letter

appealing the decision to grant Gue unemployment benefits on June 17, 2009, two days before he filed his complaint with the NYSDHR  (*Id.* at 74-77.)

### 3.    Violation of the Americans with Disabilities Act (ADA)

Gue claims that Suleiman and Tri-State violated the Americans with Disabilities Act ("ADA") because Suleiman wanted to deny him health insurance after learning of an alleged disability Gue says he suffered after a car accident. (Gue Dep. 92-94.)  Gue alleges that Suleiman believed that he received damages from a case relating to a car accident, and therefore had money to cover his health and medical expenses. (*Id.* at 93; *see* Compl. at 3.)  Gue makes no assertion in his Complaint that Suleiman knew of any specific injuries he may have sustained in the car accident.  At his deposition, Gue said that he told Suleiman that he had been in a car accident and that he needed to receive therapy two to three times a week to treat injuries to his back, neck, and shoulder.  (Gue Dep. 92-93.)

Suleiman alleges that none of Tri-State's employees, except Tri-State's owners, received medical insurance.[2] (Decl. of Suleiman at ¶ 15; *see* Def. Summ. J. at Ex. 13.)  Suleiman provided documentation of Tri-State's insurance policies in its response to discovery requests by Gue. Additionally, Suleiman argues that Gue's disability claim is meritless because Gue has not alleged or shown that he suffers from a disability, or that Defendants were aware of, or believed that he suffered from, a disability.  (Def. Summ. J. at 7.)  Suleiman notes that Gue did not request reasonable accommodation of any nature from Defendants.  (*Id.*)

---

[2] Following its investigation, the NYSDHR determined that the record supports Suleiman's claim that he was unaware of Gue's alleged disability and that he had not provided medical insurance to any of Tri-State's employees. (Motion for Summ. J. at Ex. 5 (Gue v. Tri-State Limousine, No. 10134892 (N.Y. Div. Hum. Rts. May 4, 2010) (determination and order after investigation)).

6

**B.    Procedural History**

Gue filed his initial Complaint on November 23, 2010, and on January 3, 2011, the Court ordered him to amend his Complaint to allege more specific facts.  Gue submitted his Amended Complaint on February 16, 2011.  He filed a motion requesting pro bono counsel on February 6, 2012, which the Court denied without prejudice on March 12, 2012.  On April 29, 2011, the Parties consented to proceed before the undersigned for all purposes pursuant to 28 U.S.C. 636(c).  On September 20, 2011, the Court ordered that the case, which was and remains *pro se*, be referred for mediation to the Court's Alternative Dispute Resolution program.  This order for mediation was subsequently rescinded by the Court on September 20, 2011, after Suleiman objected to participating in mediation.

On December 22, 2011, Suleiman filed his motion for summary judgment claiming that Gue had failed to set forth facts sufficient to state a claim for racial discrimination, and that Gue's Amended Complaint only alleges discrimination in the most conclusory and general terms.  On January 6, 2012, Gue opposed the motion, claiming that Suleiman failed to provide him with the discovery documents he had requested.  Suleiman stated that he did not possess the documentation requested by Gue, and the Court found no basis to order further production by Suleiman.  Gue submitted his affirmation in opposition on June 1, 2012.

### III. DISCUSSION

**A.    Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if it determines that "there is no genuine issue of material fact and

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c).  Under this standard, summary judgment is proper if "viewing the record in the light most favorable to the nonmoving party, the evidence offered demonstrates that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." *Pension Benefit Guar. Corp. v. LTV Corp.*, 875 F.2d 1008, 1015 (2d Cir. 1989) (internal quotations omitted), *rev'd on other grounds*, 496 U.S.  633 (1990).  In making this determination, the court does not resolve disputed factual issues, but reaches a conclusion as to whether there exists "a genuine and material issue for trial." *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1175 (2d Cir. 1993).  An issue of fact is "genuine" if it provides a basis for a "rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate where no reasonable trier of fact could find in favor of the nonmoving party, *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989), thereby "dispos[ing] of meritless claims before becoming entrenched in a frivolous and costly trial." *Donahue v. Windsor Locks Bd. Of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987).

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568 (2d Cir. 1993) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). This burden may be met by demonstrating that there is a lack of evidence to support the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party satisfies this initial burden, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 256 (1986).  "[T]he mere existence of factual issues–where those issues are not material to the claims before the court–will not suffice to defeat a motion for summary judgment." *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985).  If the nonmoving party fails to respond by "affidavits or as otherwise provided in [Rule 56 and] set forth specific facts showing that there is a genuine issue for trial[,] . . . summary judgment, if appropriate, shall be entered against the adverse party." Fed R. Civ P. 56(e).

**B.     Suleiman Does Not Satisfy the Same Actor Inference Standard**

Suleiman argues that because he previously worked with Gue at another company, County Limousine, and subsequently specifically sought him out for hire when he had a job opening at Tri-State Limousine, he should be accorded the "same actor inference" against discrimination.  This inference applies because "[w]hen the same actor hires a person already within the protected class, and then later fires that same person, 'it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.'"  *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000), *cert, denied.* 530 U.S. 1261 (2000) (quoting *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997), *cert. denied.* 525 U.S. 936 (1998)).  Though the Second Circuit has only used the same actor inference with regard to Age Discrimination in Employment Act ("ADEA") claims, district courts within the Second Circuit have applied the rationale for the "same actor inference" to Title VII cases.  *Collins v. Connecticut Job Corps.*, 684 F. Supp. 2d 232, 251-52 (2010).

"Where the termination occurs within a relatively short period of time after the hiring there is a strong inference that discrimination was not a motivating factor in the employment decision." *Grady v. Affiliated Cent.*, 130 F.3d 553 at 561.  However, this inference becomes less

compelling when a "significant period of time elapses between the hiring and firing." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 138 (2d Cir. 2000). This is because over the years, "an individual may develop an animus toward a class of people that did not exist when the hiring decision was made." *Id.* (quoting *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995)). Thus, the "same actor inference" no longer applies when "more than two years separate the hiring and the firing." *Thomas v. iStar Financial, Inc.*, 438 F. Supp. 2d 348, 361 (S.D.N.Y. 2006). Here, there were approximately three years between Gue's hiring and firing. Whether the cases establish a bright line rule at two years need not be decided here. The three years of interaction and the nature of those interactions, undermine the viability of the inference.

**C.     Suleiman May Not be Held Individually Liable Under Title VII or the NYCHRL**

**1.     Individuals are not Personally Liable under Title VII or the NYCHRL**

"[I]ndividual[] [defendants] are not subject to liability under Title VII." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam). Suleiman therefore cannot be held individually liable under Title VII. Similarly, individual liability for discriminatory acts is void under the NYCHRL. *See Kato v. Ishihara*, 239 F. Supp. 2d 359, 365 (S.D.N.Y. 2002).

**2.     Gue Cannot Establish Liability Under NYSHRL**

Under certain circumstances, individuals may be personally liable under the NYSHRL. "A supervisor is an 'employer' for purposes of establishing liability under the NYSHRL if that supervisor 'actually participates in the conduct giving rise to [the] discrimination.'" *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1315 (2d Cir. 1995)). "[T]he NYSHRL states that it shall be an unlawful discriminatory practice 'for

10

any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.'" *Id.* at 157-58 (quoting N.Y. Exec. Law § 296(6)). Gue must therefore first raise a question of fact as to the underlying claim of discrimination by the employer. *Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 536 (E.D.N.Y. 2005). Because he fails to allege sufficient facts required to establish a *prima facie* case of discrimination under the NYSHRL, his claim here must fail.

## D.  Failure to Establish a Prima Facie Case of Discrimination Based on Race and National Origin

Employment discrimination cases brought under Title VII are analyzed under the burden-shifting test laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). *McDonnell-Douglas* requires that the plaintiff first establish a *prima facie* case of discrimination, which consists of four elements: "(1) that plaintiff falls within the protected group; (2) that plaintiff applied for a position for which he was qualified; (3) that plaintiff was subject to an adverse employment decision and (4) that the adverse employment decision was made under circumstances giving rise to an inference of unlawful discrimination." *Byrnie v. Town of Cromwell*, 243 F.3d 93, 101 (2d Cir. 2001). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. If the employer articulates such a reason, the *McDonnell-Douglas* framework is no longer applicable and its presumptions and burdens disappear, and the only issue remaining is the "discrimination vel non." *Levine v. Smithtown Cent. School Dist.*, 565 F. Supp. 2d 407, 421 (E.D.N.Y. 2008). The burden thus shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that the discrimination was an actual reason for the adverse employment action. *Id.*; *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

11

Plaintiff's burden in establishing a prima facie case is "de minimis." *Hill v. Rayboy-Braunstein*, 467 F. Supp. 2d 336, 350 (S.D.N.Y. 2006) (citing *Douglas v. Dist. Council 37 Mun. Employees' Educ. Fund Trust*, 207 F. Supp. 2d 282, 289 (S.D.N.Y. 2002)). However, bald assertions without more are insufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). Summary judgment is therefore appropriate where the only evidence in the case are the conclusory allegations of the plaintiff. *During v. City Univ. of N.Y.*, 2005 WL 2276875, at *4, 8-9 (S.D.N.Y. Sept. 19, 2005).

### 1.    Gue is in a Protected Class and was Qualified for his Position

The first and second prongs of the *prima facie* case are not at issue here. It is undisputed that Gue is Black and of Haitian nationality, which places him in a protected class, and that he was qualified for his position at Tri-State.

### 2.    Gue Suffered an "Adverse Employment Action" When He Was Suspended

To satisfy the "adverse employment action" requirement, the plaintiff must demonstrate that he underwent a "materially adverse change" in the terms and conditions of his employment. *Galabaya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). The "plaintiff must present an employment action" that had the effect of depriving him or her of "some 'tangible job benefits' such as 'compensation, terms, conditions or privileges' of employment." *Albuja v. National Broadcasting Co. Universal, Inc.*, No. 10 Civ. 3126 (VM), 2012 WL 983566, at *5 (S.D.N.Y. Mar. 16, 2012) (internal citations omitted). "Adverse employment actions are material only if they are 'of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Id.* (quoting *Torres v. Pisano*, 116 F.3d

625, 632 (2d Cir. 1997)). There are no bright-line rules for what meets the threshold for an adverse employment action and courts make this determination on a case-by-case basis. (*Id.*) (quoting *Pimentel v. City of New York*, No. 00 Civ. 326, 2002 WL 977535, at *3 (S.D.N.Y. May 14, 2002)). The "plaintiff's working conditions must undergo a change 'more disruptive than a mere inconvenience or an alteration in job responsibilities.'" *Hill v. Rayboy-Braustein*, 467 F. Supp. 2d 336, 351 (S.D.N.Y. 2006) (quoting *Galabya*, 202 F.3d at 640). Examples of such a change include "a demotion, a reduction of wages, a loss of benefits, a significant loss of material responsibilities, or another action particular to Plaintiff's circumstances." (*Id.*)

Gue claims first that he was adversely affected because his employment was terminated in April 2009. Suleiman maintains, however, that Gue was not terminated in April 2009, but merely suspended for a period of three weeks, and that he was expected to return at the end of that suspension. Regardless of whether he was terminated or suspended, Gue's loss of employment for three weeks could be construed as an adverse employment action because Gue found the conditions of his employment altered for the worst. Suspension or termination is not a mere inconvenience or a simple alteration in job responsibilities.

Gue's second claim of "adverse employment action" is that he did not receive medical insurance benefits from Suleiman while other employees at Tri-State allegedly did. Aside from Gue's bare assertion, there is no evidence of any other employee receiving medical insurance. Gue's failure to demonstrate that the denial of medical insurance benefits caused his employment to be altered for the worst supports Suleiman's contention that Gue has not met his burden.

13

a.     **Gue Has Not Alleged Facts Sufficient to Show Adverse Employment Action Based on Racial Discrimination**

To satisfy the fourth prong of the *McDonnell Douglas* test, a plaintiff must show that the adverse employment actions were the result of racial discrimination. *See Gorham v. Transit Workers Union*, 1999 WL 163567, at *4 (S.D.N.Y. Mar. 24, 1999). "Hostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable." *Nakis v. Potter*, 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004) (citing *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)). The plaintiff, however, need only establish a mere inference of discrimination. *Hill*, 467 F. Supp. 2d at 356. A plaintiff may show an inference of discrimination by demonstrating that "other similarly situated persons not of Plaintiff's protected class, were treated more favorably than her in the workplace." (*Id.* (citing *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467-68 (2d Cir. 2001)). To be considered "similarly situated," these "persons must have been subject to the same standards governing performance evaluation and discipline and must have engaged in conduct similar to Plaintiff's." (*Id.*) Gue has alleged that other co-workers in his position as drivers, who were not Black or Haitian, were given medical insurance benefits by Tri-State. He has, however, failed to submit any evidence to support this claim.

Gue has also failed to allege sufficient facts to support a determination that his alleged termination or suspension was a result of racial discrimination. Rather, he discusses Suleiman's bad temper and states generally that he believed he was treated differently from other drivers based on his race and accent. (Gue Depo. 90-91.) In explaining why he believes he was discriminated against, Gue stated that he begged for his job but Suleiman responded, "I don't

14

believe what you say and I do not want to listen to your nonsense." (*Id.* at 90.)  A plaintiff must

~~set forth more than such conclusory allegations to defeat a motion for summary judgment.~~

*Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010).  Moreover, a plaintiff's

"mere subjective belief" that he was discriminated against because of his race does not sustain a

race discrimination claim. *Baptiste v. Cushman & Wakefield*, 2007 WL 747796, at *7 (S.D.N.Y.

Mar. 7, 2007).  Any inference of racial discrimination is further undermined by the fact that Gue

was replaced by a Black Haitian driver, also in the same protected class as Gue.  For the

foregoing reasons and because Gue has not stated facts sufficient to establish a *prima facie* case

of facial discrimination under Title VII, Defendants' motion for summary judgment for the

employment discrimination claim is **GRANTED**.

**E.      Failure to Establish a Prima Facie Case of Retaliation in Violation of Title VII**

       The anti-retaliation provision of Title VII does not protect an individual from all

retaliation, but from retaliation that produces an injury or harm. *Burlington Northern and Santa*

*Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).  To establish a *prima facie* case of employer

retaliation, the plaintiff must show "(1) participation in a protected activity; (2) that the

defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal

connection between the protected activity and the adverse employment action." *Jute v. Hamilton*

*Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (quoting *McMenemy v. City of Rochester*,

241 F.3d 279, 282-83 (2d Cir. 2001)).  If a plaintiff meets this initial burden, a presumption of

retaliation arises.  The employer then bears the burden to "articulate a legitimate, non-retaliatory

reason for the adverse employment action." (*Id.*)  Once an employer has offered such proof, the

15

presumption of retaliation then dissipates and the employee must show that "retaliation was a substantial reason for the adverse employment action." (*Id.*)

Gue's claim fails the first prong articulated in *Burlington*. He claims that Suleiman retaliated against him because he filed a complaint with the NYSDHR and that the retaliation involved sending a letter to the New York State Department of Labor asking for Gue to be denied unemployment benefits because Gue had voluntarily left his employment at Tri-State to become a barber. (Am. Compl. at 3.) Gue filed a complaint with the NYSDHR on June 19, 2009, after Suleiman had sent his appeal letter to the Department of Labor. (*See* Def. Summ. J. at Ex. 6, 7.) Thus, given Gue's own recitation of the facts, Suleiman's letter could not have been in retaliation to his complaint with the NYSDHR since Suleiman's action occurred *before* Gue filed his complaint. While Gue's assertion of the facts may lead to the conclusion that his complaint to the NYSDHR was a protected activity, and that Suleiman's letter constituted an adverse employment action, the remaining elements of a *prima facie* case for retaliation cannot be established. There is no causal connection between the protected activity and the adverse employment action.

## F.   Gue Cannot Set Forth a Prima Facie Case that Suleiman and Tri-State Racially Discriminated Against him in Violation of the NYSHRL

Claims of discrimination under the NYSHRL and the NYCHRL are analyzed under the *McDonnell Douglas* framework used for Title VII, *Bermudez*, 783 F. Supp. 2d at 76 (citing *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010)), and the Court reaches the same conclusion: Gue is unable to establish an inference of discrimination under either the NYSHRL or NYCHRL.

G.    **Failure to Establish a Prima Facie Case of Violation of the Americans with Disabilities Act**

Employment discrimination cases under the Americans with Disabilities Act (ADA) are also evaluated under the burden-shifting analysis stated in *McDonnell Douglas*.  In order to establish a prima facie case of discrimination under the ADA, a plaintiff must establish that: (1) her employer is subject to the Americans with Disabilities Act; (2) plaintiff was disabled within the meaning of the ADA; (3) plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of her disability. *See Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 198 (2d Cir. 2004); *Shannon v. N.Y. City Transit Auth.,* 332 F.3d 95, 99 (2d Cir. 2003).  Suleiman does not contest that he and Tri-State are subject to the ADA.   He asserts, however, that there is no merit to Gue's assertions because Gue has neither alleged nor shown that he suffers from a disability, as defined by either federal or state law.  Moreover, Suleiman also argues that Gue has not made a showing that Defendants were aware of any alleged disability nor that he had requested any sort of reasonable accommodation from the defendants.

1.    **Gue Cannot Show That Was Disabled Under the ADA**

An individual with a "disability" is defined as any person who (1) has a physical or mental impairment that "substantially limits" one or more "major life activities;" (2) has a "record of such impairment;" or (3) is "regarded as" having such an impairment.  42 U.S.C. § 1202 (2).  Disability determinations are made on a case by case basis. *Reeves v. Johnson Controls World Servs. Inc.,* 140 F.3d 144, 151-52 (2d Cir. 1998).  The ADA "requires those claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience … is substantial."

17

*Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). "In order to be eligible to prevail upon a further showing of discrimination, a plaintiff must satisfy each of the three prongs." *Coldwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998). In assessing the severity of the impairment, courts consider: "i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

Gue's ADA claim is not supported by the record. He has not established that he has a disability as defined by the ADA, or that there is a record of such impairment. Gue alleges that he was in a car accident that left him with injuries in his back, his neck, both shoulders, knees, and elbows. (Gue Dep. 37.) Gue stated that he needed chiropractic care for these injuries continuously until 2007, as well as painkiller medication and shots. (*Id.* at 38.) He has not alleged in his Complaint that these injuries have affected any major life activities or even how they affected him on the job. Even if the alleged disability affected his ability to work for Tri-State, under the facts as he has stated them, Gue cannot show that those injuries significantly restricted his ability to work as a driver, and has he shown how it has restricted any other major life activity.

18

2.      **Gue Has Not Proven that Suleiman's Refusal to Provide Him with Medical Insurance was an Adverse Employment Action**

Gue has not shown that the failure to receive medical benefits was an adverse

employment action, and the record supports Tri-State's contention that it has never provided any

of its employees, other than the owners, with medical insurance benefits.


### III. CONCLUSION

Plaintiff has not stated sufficient facts to show that he can establish a *prima facie* case for

his claims of racial discrimination and retaliation under Title VII, disability discrimination under

the ADA, and discrimination under the NYSHRL and NYCHRL.  Therefore, the Defendants'

Motion for summary judgment is **GRANTED**.


**SO ORDERED this 27th day of September 2012**
**New York, New York**


                                                    The Honorable Ronald L. Ellis
                                                    United States Magistrate Judge

19